# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 431 | **DATE** | 9/11/2003 |
| **CASE TITLE** | Telular Corporation vs. Mentor Graphics Corporation | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Enter Memorandum Opinion and Order denying defendant's motion for partial summary judgment.

(11)  ☐  [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 1 2 2003 | |
| | Docketing to mail notices. | | date docketed | 76 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MPJ | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  03 SEP 11 PM 5:00  Date/time received in central Clerk's Office | 9/11/2003 date mailed notice  MPJ mailing deputy initials | |

TELULAR CORPORATION,                    )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )
                                        )    No.  01 C 431
MENTOR GRAPHICS CORPORATION,            )
                                        )
            Defendant.                  )
                                        )
                                        )

## MEMORANDUM OPINION AND ORDER

Plaintiff Telular Corporation ("Telular"), a Delaware corporation with its principal place of business in Illinois, designs and manufactures telecommunications devices. In 1996, Telular entered into a contract to purchase digital signal processors ("DSPs") from defendant Mentor Graphics Corporation ("Mentor Graphics"), an Oregon corporation with its principal place of business in Oregon. Telular indicates that it was developing a product to be built with a certain DSP designed by Texas Instruments ("TIC50"), but that purchase of DSPs from Texas Instruments was not feasible. Telular alleges that Mentor Graphics informed it that Mentor Graphics produced a clone of the TIC50, the M320C50. Telular claims that after purchasing M320C50s from Mentor, they did not perform as allegedly promised. Telular filed a three-count complaint alleging fraudulent inducement, violation of the Illinois Consumer Fraud Act, and breach of contract. I dismissed the Consumer Fraud Act claim, finding that an Oregon

choice of law provision in the contract precluded application of the Illinois act. *Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431 (N.D. Ill. filed Jan. 22, 2001) (order dismissing Count II). Mentor Graphics now moves for summary judgment as to Count I, the fraudulent inducement claim, arguing that Oregon's two-year statute of limitations for fraud actions applies, that Tellular has waived any claim for fraudulent inducement, and that there was no justifiable reliance here as a matter of law. Additionally, Mentor Graphics requests that the claim for punitive damages in Count I be dismissed. I deny the motion.

A federal court sitting in diversity applies the choice of law principles of the state in which it sits. *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 963 n.7 (7th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Illinois applies forum law to procedural matters, *Newell Co. v. Petersen*, 758 N.E.2d 903, 908 (Ill. App. Ct. 2001) (citing *Marchlik v. Coronet Insurance Co.*, 239 N.E.2d 799 (Ill. 1968)), which include statutes of limitations, *id.* (citing *Fredman Brothers Furniture Co. v. Department of Revenue*, 486 N.E.2d 893 (Ill. 1985)). *See also Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir. 1977) ("[T]he limitations statutes of the forum will usually apply, even though the causes of action to which they are applied may have ... been governed by the substantive law of another jurisdiction."). This is true even where the litigants are parties to a contract

2

containing a choice of law provision. *Trs. of the Operative Plasterers' & Cement Masons' Local Union Officers & Employees Pension Fund v. Journeymen Plasterers' Protective & Benevolent Soc'y, Local No. 5*, 794 F.2d 1217, 1221 n.8 (7th Cir. 1986) ("[W]e note that the pension plan's choice of law provision, which indicates that the District of Columbia's substantive law is to be used in construing the plan, is irrelevant when considering which statute of limitation is to be used by the district court."). Refusing to let a contractual choice of law clause trump the Illinois rule requiring application of the forum state's statute of limitations is especially appropriate where, as here, the choice of law clause is standard boilerplate.[1] *Bridge Prods., Inc. v. Quantum Chem. Corp.*, No. 88 C 10734, 1990 WL 19968, at *4 (N.D. Ill. Feb. 28, 1990) (Kocoras, J.) (citing *Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142-43 (10th Cir. 1985); *Des Brisay v. Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir. 1981)). Thus, Illinois law governs the statute of limitations issue here.

Illinois has a five-year statute of limitations for fraud. 735 ILCS 5/13-205; *Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1074-75 (N.D. Ill. 2001) (Bucklo, J.). However, although not discussed by either party, Illinois also has a borrowing statute, which states that "[w]hen a cause of action has arisen in a state

---

[1] The choice of law clause reads in full: "This Agreement shall be governed by the laws of the State of Oregon." (Def.'s Statement Facts Ex. 10 at 7.)

or territory out of this State ... and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13-210. One prerequisite to applying the borrowing statute is that none of the parties are Illinois residents. *LeBlanc v. G.D. Searle & Co.*, 533 N.E.2d 41, 42 (Ill. App. Ct. 1988) (citing *Miller v. Lockett*, 457 N.E.2d 14 (Ill. 1983)). Mentor Graphics, as an Oregon corporation with its principal place of business in Oregon, is clearly not an Illinois resident, and while Telular has its principal place of business in Illinois, it is a Delaware corporation. For purposes of the borrowing statute, a corporation can have only one residence and that is its state of incorporation. *Id.* at 42-44. Thus, neither party here is an Illinois resident, and application of the borrowing statute is not barred on that ground.

Under the borrowing statute, if Telular's fraud action "has arisen in" another state, and could not be maintained under that state's law "by reason of the lapse of time," the action cannot be maintained here. One way to read "arisen in" in the borrowing statute is simply to read it (at least in tort cases) as the rule of *lex loci delicti*. Thus, courts originally read the "arisen in" language to reference "the law of the place where the last act occurred to create liability." *Manos v. Trans World Airlines, Inc.*, 295 F. Supp. 1170, 1175 (N.D. Ill. 1969) (citing *Janeway v.*

*Burton*, 66 N.E. 337 (Ill. 1903); *Gray v. Am. Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961)). In *Ingersoll v. Klein*, 262 N.E.2d 593 (Ill. 1970), however, the Illinois Supreme Court adopted the second restatement's most significant relationship analysis as the state's general choice of law rule.

It appeared at first as though *Manos'* *lex loci* reading of the borrowing statute would survive *Ingersoll*. In *Manos* itself, the court foresaw the coming of the second restatement rule, finding that even though *lex loci* applied to the borrowing statute, it would not be used to determine the applicable substantive law in the case. 295 F. Supp. at 1173. Further, a post-*Ingersoll* case found that notwithstanding Illinois' adoption of the second restatement, *Manos'* *lex loci* reading of the borrowing statute was still valid. *Klondike Helicopters, Ltd. v. Fairchild Hiller Corp.*, 334 F. Supp. 890, 894 (N.D. Ill. 1971) ("While this court is quite aware that the *Manos* case was decided prior to the Illinois Supreme Court's decision in *Ingersoll* ... we feel that the court's reasoning in *Manos* is still valid.").[2] There is nothing inherently problematic about reading a borrowing statute in light of the *lex loci* rule while applying the second restatement to determine

---

[2] While *Klondike Helicopters* found that the reasoning in *Manos* was still valid, it failed to explicitly endorse a *lex loci* reading of the borrowing statute over a most significant relationship reading, holding only that in the case before it, both readings pointed to the same result. 334 F. Supp. at 894-95.

applicable substantive law. *See, e.g., Sack v. Low*, 478 F.2d 360, 367 (2d Cir. 1973) (finding no obstacle to determining a cause of action arises for purposes of a borrowing statute in a state different from the one providing the substantive law).[3] Indeed, retaining a *lex loci* reading would seem to be more true to the language of the borrowing statute, as *lex loci* determines where a cause of action has "arisen," while the second restatement simply determines which law governs the action without reference to where it may have arisen. *See Klondike Helicopters*, 334 F. Supp. at 894.

Nevertheless, despite these early cases, it is by now well-established that the "arisen in" language of the borrowing statute should be read through the lens of the second restatement. *Bridge Prods.*, 1990 WL 19968 at *5 ("[The second restatement] is the choice of law approach that Illinois has adopted for conflicts issues generally, and the federal courts of this district have by and large concluded that this same [approach] would be extended to the 'arising under' issue within the Borrowing Act."); *Atchison, Topeka & Santa Fe Ry. v. Chevron U.S.A., Inc.*, No. 82 C 3034, 1985 WL 2265, at *4 (N.D. Ill. Aug. 5, 1985) (Nordberg, J.) ("Illinois courts now use the 'most significant relationship' test to

---

[3]     *But see* Eugene F. Scoles & Peter Hay, Conflict of Laws § 3.11 (2d ed. 1992) ("With the advent of modern choice-of-law rules, it seems desirable to reevaluate the reference [to the state in which the action has arisen] in borrowing statutes so as to align the applicable limitation with the applicable substantive law.").

determine where the cause of action arose."). *See also Hamilton v. Gen. Motors Corp.*, 490 F.2d 223, 225 n.1 (7th Cir. 1973) (finding that the district court did not err in failing to apply the borrowing statute because "Illinois undoubtedly had the most significant relationship" to the action and thus "the cause of action 'arose' in Illinois"); *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694-96 (Ill. App. Ct. 1999) (applying second restatement to determine where cause of action arose for purposes of the borrowing statute).

With respect to fraud and misrepresentations, the second restatement first looks to whether the action taken in reliance on the alleged misrepresentations occurred in the same state where the misrepresentations were made and received. Restatement (Second) of Conflict of Laws § 148. Here, the alleged misrepresentations were made and received at a meeting in New York while Telular's action in reliance, the signing of the contract, occurred in Illinois. In such a situation, I look to six different factors to determine which state has the most significant relationship to the action. *Id.* These factors are:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
(f) the place where the plaintiff is to render performacne

7

> under a contract he has been induced to enter by the false representations of the defendant.

*Id.* As noted above, the alleged misrepresentations were made and received in New York, while Telular acted in reliance on them in Illinois. Also as noted above, Mentor Graphics is an Oregon corporation with its principal place of business in Oregon, while Telular is a Delaware corporation with its principal place of business in Illinois. The last two factors of section 148 are inapplicable here.

Comments to section 148 provide some assistance in assigning weight to these various factors. The place where plaintiff received the representations (New York) is as important a contact as the place where defendant made them (also New York), but neither is as important a contact as the place where the plaintiff acted in reliance (Illinois). *Id.* cmt g. Further, plaintiff's principal place of business (Illinois) is a contact "of substantial significance" when the loss is pecuniary in nature, more so than the place of incorporation (Delaware). *Id.* cmt i. These status contacts of plaintiff are more important than similar contacts of defendant (Oregon). *Id.* Examining the factors of section 148 and assigning them the respective weights suggested by the comments leads to the conclusion that Illinois is the state with the most significant relationship to the common law fraud action. Thus, as the "arisen in" language of the borrowing statute is to be read in light of the second restatement, the action has arisen in Illinois.

Consequently, the action has not arisen in another state, and Illinois' borrowing statute does not apply. Thus, the Illinois five-year statute of limitations for fraud governs this action; it is not barred by the Oregon two-year statute of limitations.

Mentor Graphics also makes two substantive arguments for partial summary judgment. The substantive issues in Count I are governed by Oregon law. Although my previous order finding that Oregon substantive law applies was technically limited to the statutory fraud claim, my reasoning in that decision based on *Janice Doty Unlimted, Inc. v. Stoecker*, 697 F. Supp. 1016 (N.D. Ill. 1988) (Aspen, J.) and *Hofeld v. Nationwide Life Insurance Co.*, 322 N.E.2d 454 (Ill. 1975) applies with equal force to the common law fraud claim as well. *See Midway Home Entm't Inc. v. Atwood Richards Inc.*, No. 98 C 2128, 1998 WL 774123 (N.D. Ill. Oct. 29, 1998) (Holderman, J.) (applying contractual choice of law clause to both statutory fraud and common law fraudulent inducement claims). *See also Fed. Deposit Ins. Corp. v. W.R. Grace & Co.*, No. 84 C 5031, 1987 WL 17495, at *4 (N.D. Ill. Sept. 21, 1987) (Leinenweber, J.) (enforcing choice of law clause in contract alleged to have been fraudulently induced where alleged fraud did not pertain to inclusion of the choice of law clause) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1979)).

Mentor Graphics first argues that Tellular's entry into an amended agreement with it after discovering the alleged fraud

9

constitutes a waiver of any claim for fraudulent inducement. According to the Oregon Supreme Court,

> [i]t is well established by the authorities that when one who has been induced by fraud to enter into a contract, subsequently, with knowledge of the fraud, enters into another agreement respecting the same transaction with the one guilty of the fraud, he, the injured party, thereby waives and relinquishes all right to damages on account of such fraud. If he receives some substantial concession from the one guilty of such fraud, he waives his right to insist further upon holding the wrongdoer responsible in damages for the fraud.

*Conzelmann v. Northwest Poultry & Dairy Prods. Co.*, 225 P.2d 757, 766 (Or. 1950). In order for a new agreement to operate as a waiver of a fraud claim, "it is essential that the parties intend that it have that effect." *Nielsen v. Stephens*, 997 P.2d 257, 261 (Or. Ct. App. 2000) (reviewing post-*Conzelmann* decisions of the Oregon Supreme Court). Here, Mentor Graphics presents no evidence of such an intent. While the amended agreement added to and supplemented the original agreement, Mentor Graphics points to no evidence suggesting that these changes were made as "a substantial concession based on [Tellular's] claim of fraud." *Mount Joseph Cattle Co. v. Makin Farms, Inc.*, 42 P.3d 331, 335 (Or. Ct. App. 2002).

Mentor Graphics also argues that, as a matter of law, there could have been no justifiable reliance by Tellular on alleged misrepresentations because any verbal representations by Mentor Graphics were inconsistent with the clear language of the written agreement. Mentor Graphics argues that "Tellular chose to close

10

its collective corporate eyes, and by doing so is precluded from establishing justifiable reliance." (Def.'s Reply Supp. Mot. Summ. J. at 9.) Mentor Graphics cites no Oregon law to support its position. Indeed, in balancing the need to suppress fraud against the need not to encourage negligence and inattention to one's own interests, it is the policy of Oregon courts to protect "the foolishly credulous as against the machinations of the designedly wicked." *Johnson v. Cofer*, 281 P.2d 981, 985 (Or. 1950) ("Is it better to encourage negligence in the foolish, or fraud in the deceitful? Either course has obvious dangers. But judicial experience exemplifies that the former is the less objectionable and hampers less the administration of pure justice."). Further, it is ultimately the burden of the trier of fact to resolve the conflicting claims of a party who has been fraudulent and a party who has been careless in believing a fraudulent representation. *Kubeck v. Consol. Underwriters*, 517 P.2d 1039, 554-55 (Or. 1974). Mentor Graphics fails to establish as a matter of law that Tellular had no right to rely on its alleged misrepresentations.

Finally, Mentor Graphics argues that Tellular's request for punitive damages in Count I should be rejected at this stage. As in its other substantive arguments, Mentor Graphics fails to cite any Oregon law to support its position. In Oregon, a finding of intentional fraud necessarily supports imposition of punitive damages. *McMullin v. Murphy*, 748 P.2d 171 (Or. Ct. App. 1988)

11

(citing *Green v. Uncle Don's Mobile City*, 568 P.2d 1375 (Or. 1977);

*Schmidt v. Pine Tree Land Dev.*, 631 P.2d 1373 (Or. 1981)). Because

there is a genuine issue here as to whether there was intentional

fraud, it is inappropriate to remove the punitive damages issue

from consideration at this time.

     Defendant's motion for summary judgment is DENIED.

ENTER ORDER:

_Elaine E. Bucklo_

     **Elaine E. Bucklo**
United States District Judge

Dated:    September _11_, 2003