**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TELULAR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 431 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Geraldine Soat Brown |
| MENTOR GRAPHICS CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Telular Corporation ("Telular") filed this action against defendant Mentor Graphics Corporation ("Mentor") alleging fraudulent inducement, consumer fraud, and breach of contract. [Dkt 1.] On October 28, 2005, a jury returned a verdict in favor of Mentor and against Telular. [Dkt 227.] Mentor filed a Bill of Costs, requesting the sum of $62,243.08, [dkt 235], but later filed an Amended Bill of Costs [dkt 232] amending the requested sum to $62,985.57. Mentor also filed a Supplemental Bill of Costs requesting an additional $17,010.98. [Dkt 236.] Telular filed objections to Mentor's Bill of Costs. [Dkt 230.] Mentor filed a reply. [Dkt 231.] The total amount requested by Mentor is $79,996.55. For the reasons stated herein, Mentor is entitled to a total of $19,670.38.

## LEGAL STANDARD

The costs that may be recovered pursuant to Fed. R. Civ. P. 54(d)(1) are set out in 28 U.S.C. § 1920. They do not include every out-of-pocket expense that might be incurred by a party in the

course of litigation. To be recoverable, a particular expense must fall into one of the categories of costs statutorily authorized for reimbursement. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). The costs allowed are: (1) the fees of the clerk and marshal; (2) fees for court reporters and transcripts; (3) fees for printing and witnesses; (4) fees for copies of papers necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts and interpreters. 28 U.S.C. § 1920. It is possible for some out-of-pocket expenses that do not qualify under § 1920 to be awarded to the prevailing party as a legitimate component of attorneys' fees under a fee shifting statute or contract clause. *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 916 F. Supp. 751, 765 (N.D. Ill. 1996) (collecting cases). There is no such statute or clause applicable here and therefore Mentor may not collect attorneys' fees or related costs. The expense claimed must also be reasonable and necessary. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995). "Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). A court must review a proposed petition for costs "in scrupulous detail." *Young v. City of Chicago*, No. 00 C 4478, 2002 WL 31118328 at *1 (N.D. Ill. Sept. 24, 2002) (Leinenweber, J.).

There is no dispute that Mentor is the prevailing party and is accordingly entitled to its costs under § 1920. Rather, Telular disputes particular items and amounts that Mentor seeks. Mentor argues that the prevailing party is *prima facie* entitled to costs and that it is the burden of the party opposing costs (in this case, Telular) to establish reasons to deny costs. (Def.'s Reply at 2.) Mentor's argument is misplaced; the party opposing costs bears the burden only on the issue of whether costs should be awarded at all, not whether particular items of costs should be allowed or

disallowed (which is the issue here). *See Popeil Bros., Inc. v. Schick Elec., Inc.*, 516 F.2d 772, 774 (7th Cir. 1975). The portions of the cases Mentor cites (Def.'s Reply at 2-3) in support of its argument address, or cite to cases addressing, the former issue, not the latter. *See e.g., Chemetall GmbH v. ZR Energy, Inc.*, No. 99 C 4334, 2001 WL 1104604 at *22 (N.D. Ill. Sept. 18, 2001) (Schenkier, M.J.) (holding that plaintiff was entitled to recoverable costs because defendants had not shown that there was misconduct by plaintiff or that defendants were unable to pay). The prevailing party bears the burden of demonstrating the amount of its recoverable costs because the prevailing party knows, for example, how much it paid for copying and for what purpose the copies were used. *See Ochana v. Flores*, 206 F. Supp. 2d 941, 946 (N.D. Ill. 2002). Once the prevailing party puts that information before the court in the required detail, the opposing party can dispute it, but the opposing party does not have that information to start. Thus, Mentor has the burden of showing that the amounts it seeks are recoverable costs. *See id.*

## ANALYSIS

Mentor seeks expenses for deposition transcripts and court reporter fees, photocopying, exemplification, witness travel and accommodations, Lexis and other online legal research, mailing, facsimile transmissions, long distance telephone calls, messenger service, and attorney and client travel and accommodations. Telular objects to the claimed costs on the bases that they are insufficiently supported by the evidence, not recoverable under the law, or both. (*See* Pl.'s Resp. at 1.) Each claimed item or category of items is addressed in turn.

## I. Transcripts

Mentor seeks a total of $14,697.08 for costs associated with court reporter and deposition fees. (Def.'s Reply at 3; Am. Bill of Costs at 3 ($9,673.89); Supp. Bill of Costs at 3 ($5,023.19).) Specifically, Mentor seeks costs for the deposition transcripts of ten witnesses and for several trial and hearing transcripts. (Def.'s Reply at 3-4.)

The costs of transcripts and fees for the court reporter are recoverable under § 1920(2). To recover such costs, the transcripts must be "necessarily obtained for use in the case." *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993). "[T]ranscripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are 'reasonably necessary.'" *Id.* (citation omitted). Telular does not object to the claimed costs on the basis that they are unreasonable. Instead, Telular argues that the documentation provided by Mentor does not contain sufficient information to calculate the amount charged per page, citing Local Rule 54.1(b), which mandates that "the costs of the transcript . . . shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed . . . ." (Pl.'s Resp. at 2.) Different rates apply depending on the type of transcript. Each type of transcript Mentor claims is addressed in turn.

### A. Daily Trial Transcripts

Mentor seeks $808.50 for daily transcripts of two days of courtroom proceedings. (Am. Bill of Costs at 1; Spread A.) "The additional cost of daily trial transcripts is reasonable and necessary when they are necessary for, among other things, direct and cross examination of witnesses and to respond to the opposing party's motions." *Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.*, No. 99

C 7049, 2004 WL 1899882 at *5 (N.D. Ill. Aug. 12, 2004) (Leinenweber, J.). The cost of daily transcripts has also been awarded where the trial was lengthy and complex. *Majeske*, 218 F.3d at 825 n. 3 (citations omitted); *see also Ernst v. Anderson*, No. 02 C 4884, 2006 WL 163024 at *2 (N.D. Ill., Jan. 18, 2006) (Darrah, J.)[1].

Mentor seeks the cost of daily transcripts for two court hearings. (Def.'s Reply, Ex. A at 4, 5.) Although Mentor states only that the transcripts were "for purposes of litigation," the court's review of the dates for which the transcripts were ordered shows that the transcripts were of rulings on certain jury instructions (September 7, 2005) (*id.* at 5) and the final pretrial conference (October 7, 2005) (*id.* at 4). Telular does not claim that the transcripts were not necessary. Mentor provides two invoices with its reply showing that Mentor was charged for 147 pages at a rate of $5.50 per page (*id.* at 4, 5), which is reasonable because it does not exceed the rate allowed for daily transcripts by the Judicial Conference (U.S. Dist. Ct. for the N. Dist. of Ill., *Maximum Transcript Rates - All Parties (Per Page)*, http://www.ilnd.uscourts.gov/CLERKS_OFFICE/CrtReporter/ trnscrpt.htm (last updated Feb. 28, 2003)). Mentor provided sufficient documentation supporting the number of pages and rates per page. Although Mentor's explanation for the use of the transcripts should have been more detailed, the court will allow Mentor to recover $808.50 for daily transcript costs for those particular hearings.

---

[1] In determining whether to tax the additional cost of daily transcripts, Judge Darrah considered the following six factors: "(1) the length of the trial and the complexity of the issues, (2) whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, (3) whether proposed findings of fact were required, (4) whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness, (5) the size of the claim, [(6)] and the importance of witness credibility." *Ernst*, 2006 WL 163024 at *2 (citation omitted).

## B. Hearing Transcript

Mentor seeks $227.70 for a copy of a hearing transcript and has attached an invoice to its reply in support of this claimed cost. (See Def.'s Reply, Ex. A at 7; see also Bill of Costs at Spread A.) That invoice only contains the words "copy of hearing transcript" and shows the total amount charged to Mentor. (Id.) Mentor has not identified the type of hearing, the date of the hearing, the total number of pages in the transcript, or the price charged per page. Without that information, the court cannot assess the reasonableness of this expense. See Fait v. Hummel, No. 01 C 2771, 2002 WL 31433424 at *1 (N.D. Ill. Oct. 30, 2002) (Conlon, J.); Shah v. Village of Hoffman Estates, No. 00 C 4404, 2003 WL 21961362 at *1 (N.D. Ill. Aug. 14, 2003) (Leinenweber, J.) (holding that "[w]here a party seeking costs fails to specifically identify the number of pages in a requested transcript, no costs will be awarded"). Mentor is not entitled to recover costs for that hearing transcript.

## C. Deposition Transcripts

Mentor claims a total of $13,660.88 for deposition transcript costs.[2] Telular does not argue that the ten depositions were not reasonable or necessary, but instead argues that Mentor failed to provide sufficient documentation to support its claim. (Pl.'s Resp. at 1-3.) To be entitled to costs for the depositions, Mentor must provide documentation sufficient to show that the claimed amount does not exceed the regular copy rate as established by the Judicial Conference. LR 54.1(b); see

---

[2] The court calculated the claimed amount by subtracting the amounts claimed for the daily trial transcripts ($808.50) (Def.'s Reply, Ex. A at 4, 5) and the hearing transcript ($227.70) (id. at 7), from the total amount claimed ($14,697.08) for all transcripts and court reporter fees (id. at 3).

*Fait*, 2002 WL 31433424 at *1; *Shah*, 2003 WL 21961362 at *1. In addition, Mentor is entitled to be reimbursed for only one original and one copy of each transcript and the court reporter's appearance fee. *See* LR 54.1(b). Additional costs for disks, minuscripts, word indexes, extra copies, or delivery/shipping charges are not generally recoverable. *Harkins v. Riverboat Servs., Inc.*, 286 F. Supp. 2d 976, 980-81 (N.D. Ill. Oct. 08, 2003); *Fait*, 2002 WL 31433424 at *5; *but see Angevine v. WaterSaver Faucet Co.*, No. 02 C 8114, 2003 WL 23019165 at *3-5 (N.D. Ill. Dec. 23, 2003) (Brown, M.J.) (costs of minuscripts are recoverable where their use in connection with a motion for summary judgment saved other costs).

The only documentation Mentor provides in support of its claimed deposition costs is an invoice for the transcript of the deposition of Mark Peryer (Def.'s Reply, Ex. A at 6) and two spreadsheets (presumably created by Mentor's counsel) that list dollar amounts under a column labeled "Court Reporter and Deposition Fees" (Bill of Costs at Spread A; Supp. Bill of Costs at Spread A; *see also* Am. Bill of Costs at 1).

The invoice for the deposition of Mark Peryer shows that the transcript was 183 pages and that the rate per page was $2.45. (Def.'s Reply, Ex. A at 6.) The spreadsheets, however, contain no breakdown of number of pages or rates charged per page for the other depositions taken. Mentor asserts in its reply that a total of ten depositions were taken (including that of Mark Peryer), for a total number of 2,461 deposition pages. (Def.'s Reply at 4.) Mentor claims that "detailed invoices" were provided with the Bill of Costs. (*Id.*) However, the only document under "Spread A" is the spreadsheet discussed above; no invoices were attached with the spreadsheet. Other deposition and court reporter charges are listed on what appear to be Mentor's counsel's billing statements to Mentor attached under Exhibit E to the Bill of Costs, but those statements do not include actual

invoices for the depositions, and do not indicate the number of pages or the rates charged per page. Mentor acknowledges that some "court reporter invoices are not readily available." (*Id.* at 3.)

Although Mentor's documentation is scanty, deposition transcripts were, in fact, used extensively at the trial. Furthermore, Telular does not object to the number of depositions taken, or that any of these depositions were not reasonable or necessary. The court will allow Mentor to recover some costs for the depositions, specifically, costs for 2,461 deposition transcript pages (an average of 246 pages per deposition). Because the only per page rate that Mentor documents is the $2.45 rate for the Peryer deposition (Def.'s Reply, Ex. A at 6), which is below the maximum rate set by the Judicial Conference for ordinary transcripts ($3.30) (U.S. Dist. Ct. for the N. Dist. of Ill., *Maximum Transcript Rates - All Parties (Per Page)*, http://www.ilnd.uscourts.gov/CLERKS_OFFICE/CrtReporter/trnscrpt.htm (last updated Feb. 28, 2003)), that will be the per page rate awarded. Mentor is entitled to $6,029.45 (2,461 pages at $2.45 per page) for costs associated with depositions.

## II. Photocopying

Mentor requests a total of $9,275.70 for photocopying costs. (Am. Bill of Costs at 3 ($5,106.97); Supp. Bill of Costs at 3 ($4,168.73).) Section 1920(4) expressly authorizes "[f]ees for . . . copies of papers necessarily obtained for use in the case." That has been interpreted to include "copies attributable to discovery and the court's copies of pleadings, motions and memoranda." *Fait*, 2002 WL 31433424 at *5 (citation and internal quotations omitted). For documents filed with the court, only copies for the court and one copy for opposing counsel are

considered necessary. *Ochana*, 206 F. Supp. 2d at 946. The cost of additional copies made for the convenience of counsel is not recoverable. *Id.*

Telular argues that Mentor has not described the nature of the documents copied or how they were used in the case. (Pl.'s Resp. at 4.) Mentor responds, in a conclusory fashion, that "all of these copies were created for the purpose of advancing Mentor's defense of this case" and that they were "attributable to discovery, pleadings, motions and memoranda." (Def.'s Reply at 5.)

The prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991); *Angevine*, 2003 WL 23019165 at *6 (noting that a party need not "submit a bill of costs itemizing each document copied"). However, it must "provide the best breakdown obtainable from retained records," (*Northbrook Excess*, 924 F.2d at 643), and certainly enough information to allow the court to make a determination that the costs sought are, in fact, authorized by § 1920. "The court cannot award [the prevailing party's] copying costs without some confidence that the costs are properly recoverable." *Fait,* 2002 WL 31433424 at *5.

The only documentation Mentor provides in support of the claimed photocopying costs are two spreadsheets (one attached to the Amended Bill of Costs at Spread A and one to the Supplemental Bill of Costs at Spread A) and what appear to be billing statements from Mentor's counsel to Mentor that include dates of copying, number of pages copied, and the copying charge (usually $0.07 per page). (Pl.'s Resp. at 4; *see e.g.*, Bill of Costs, Ex. E at 14-15.)

Except for the copies for the summary judgment motion (Bill of Costs, Ex. E at 4), Mentor provides no explanation as to what documents were copied or for what purpose. The spreadsheets

list only the total charges for photocopying included on each invoice to Mentor from its attorneys. Regarding the copies relating to the summary judgment motion, no information is provided about the number of copies made, the number of pages copied, or the rate charged per page. Without such information, it is not possible to determine which copies were made for the court and opposing counsel and which were made solely for the purpose of attorney convenience. *See Angevine*, 2003 WL 23019165 at *6; *Fait*, 2002 WL 31433424 at *5 (limiting award of copying costs because conclusory affidavit that copying costs were necessary was not sufficient); *Vigortone*, 2004 WL 1899882 at *8 (stating that "[a] court . . . should deny photocopying costs where the prevailing party fails to address the purpose of the copies, whether multiple copies were made of the same documents, or what documents were copied" (citation omitted)).

Mentor's counsel has submitted an affidavit explaining the procedures for billing clients for photocopying expenses. (Def.'s Reply at 5; Ex. B, 01/25/06 Aff. of Peter Skiko ("Skiko Aff.") ¶ 1.) The amounts listed in Mentor's spreadsheets are apparently based on monthly statements generated from each copier machine at Mentor's counsel's office. (Def.'s Reply at 5; Skiko Aff. ¶¶ 1-3.) Mentor asserts that when copies for the *Telular v. Mentor Graphics Corp.* case were made, the client matter number was entered into the copier machine. (Def.'s Reply at 5; Skiko Aff. ¶¶ 1, 2.) At the end of the month, a statement was generated from the copier recording the number of copies created on each date. (Def.'s Reply at 5; Skiko Aff. ¶ 3.) Mentor states that "it is impossible for Mentor's counsel to break down its particular copy costs any further than what [these] statements reflect." (Def.'s Reply at 5.) Apparently Mentor did not make an effort to calculate, for example, the number of pages included in the briefs and other court filings relating to the summary judgment motion, for which recovery would be authorized, in order to differentiate them from copies made for attorney

convenience, for which recovery is not authorized. *See Fait*, 2002 WL 31433424 at *5 (permitting recovery of copying costs for properly documented court filings). The information that Mentor has submitted simply is not sufficient to allow the court to determine what is recoverable and what is not. Without such differentiation by Mentor, any award would be based on speculation. Accordingly, Mentor's request for photocopying costs must be denied.

## III.   Exemplification

Section 1920(4) authorizes an award of costs for exemplification. The statute does not define "exemplification," but Seventh Circuit decisions have adopted an "expansive definition" including "a wide variety of exhibits and demonstrative aids." *Cefalu*, 211 F.3d at 427. However, the cases draw the line "between the cost of conducting the research and analysis eventually reflected in the exhibit, and the cost of actually preparing the exhibit itself. The latter expense is deemed compensable while the former is not." *Id.* at 427 n. 5. As with photocopies, costs for exemplification are not awarded unless they were "necessarily obtained for use in the case." *Id.* at 428 (internal quotations omitted). Among the factors considered in evaluating the necessity of a particular type of exemplification is whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed. *Id.* at 428. The court is able to determine whether an exemplification is necessary when the prevailing party identifies the exhibits and enumerates the costs associated with the exhibits. *See Vigortone*, 2004 WL 1899882 at *8.

Mentor seeks a total of $14,197.08 for exemplification. (Bill of Costs at Spread A.) That amount represents charges for items Mentor divides into three categories: (1) $145.00 for binders

-11-

of Oregon state pattern jury instructions (Pl.'s Resp. at 4; Def.'s Reply at 6);[3] (2) $958.02 for tabbing and copying exhibits for jurors (Def.'s Reply at 6; Am. Bill of Costs at 2) and $93.01 for the cost of the binders for jurors [4] (Def.'s Reply at 6); and (3) $13,001.05 for demonstrative exhibits (including charts, laminating, enlargements, and computer design) (Def.'s Reply at 7; Am. Bill of Costs at 2).

### A.  "Oregon Trial Binders"

Mentor seeks $145.00 for binders containing Oregon state pattern jury instructions. (Def.'s Reply at 6-7.) Mentor observes that Oregon law provided substantive law for issues in the case, and that the court directed that the Oregon state pattern jury instructions were to be used as a "starting point" for the jury instructions in this case. (*Id.* at 7.) However, this cost falls under the category of attorney research, not exemplification, and is not recoverable because attorneys' fees were not awarded in this case. Mentor is not entitled to the cost of Oregon state pattern jury instructions.

---

[3] Telular objects to that cost because Mentor originally described this cost merely as "Oregon State Trial; Binders." (Pl.'s Resp. at 4.) Mentor clarifies in its reply that "the proper label would be 'Oregon State Pattern Jury Instruction Binders.'" (Def.'s Reply at 7.)

[4] In an effort to correct miscalculations on its original Bill of Costs, Mentor submitted an Amended Bill of Costs. There appears, however, to be an error on the Amended Bill of Costs as well. On its original Bill of Costs, Mentor claimed a total of $14,197.08 for exemplification ($145.00 + 958.02 + 13,001.05 + 93.01 = $14,197.08). The Amended Bill of Costs, however, omits the $93.01 charge, and adjusts the total amount claimed by this amount ($145.00 + 958.02 + 13,001.05 = $14,104.07). (Am. Bill of Costs at 2, Spread A.) Then, in its reply, Mentor once again adds the $93.01 and claims the greater amount from the original Bill of Costs, or $14,197.08. (Def.'s Reply at 6.)

Such inconsistency creates confusion in the record and imposes an unnecessary burden on the court. Regardless of Mentor's oversight in omitting the $93.01 charge from the Amended Bill of Costs, however, the court will consider whether Mentor is entitled this cost, considering that it is a small amount relative to the total amount Mentor claims, which is almost $80,000.

## B. Juror Exhibit Binders

Mentor also seeks $958.02 for printing and tabbing exhibits for three-ring binders that were provided to jurors. (Def.'s Reply at 6, 8.) Both parties were required to provide each juror with a three-ring binder of exhibits and a copy of each of their respective exhibits for the binders. (*Id.* at 8.) Mentor attaches to its reply an invoice for this charge from an outside printing company. (Def.'s Reply, Ex. A at 1.) The invoice states that 897 pages were copied and a total of seven sets were made. (*Id.*) The price per page was $0.13, and the price for each tab (81 per binder) was $0.25. (*Id.*) Mentor's description of these charges and the supporting documentation is sufficient to justify a recovery of $958.02 for these charges. Mentor also seeks $93.01 for the cost of the binders themselves (Def.'s Reply at 6, 8), which is not unreasonable. Mentor is entitled to recover the cost of the copies and binders, for a total of $1,051.03.

## C. Demonstrative Exhibits

Mentor seeks $13,001.05 for demonstrative exhibits used at trial. (Def.'s Reply at 6, 7-8.) Telular objects to the amount claimed on the basis that there was no prior determination by the court that the demonstrative exhibits were necessary for the case, and that there is no other indication that there was an essential need for such exhibits. (Pl.'s Resp. at 4-5, citing *Wahl v. Carrier Mfg. Co., Inc.*, 511 F.2d 209 (7th Cir. 1975).) The Seventh Circuit, however, has not required that prior approval must be obtained, and instead has noted only that "parties who are concerned about the prospect of reimbursement for costly exemplification [may raise the issue] in advance of trial." *Cefalu*, 211 F.3d at 429 n. 6. Mentor's claim for costs for demonstrative exhibits is not denied for failure to seek prior judicial approval.

Nevertheless, to recover such costs, Mentor must show that they were reasonably necessary for the case. *Id.* at 428-29. The question is whether the exemplification was "vital to the presentation of the information, or [whether it was] merely a convenience or, worse, an extravagance." *Id.* at 429. The court agrees with Mentor that the demonstrative exhibits "greatly assisted in communicating rather complex engineering concepts and other relevant issues to the jury," and that the "enlarged exhibits [were] used often throughout the trial [and] . . . throughout Mentor's closing argument." (Def.'s Reply at 8.)

Mentor attaches an invoice to its original Bill of Costs from a company called TrialGraphix that lists a total charge of $13,001.05 for the following items:

| Description | Hours | Price | Extended |
|---|---|---|---|
| 36x60 Color Chart ½" Mounted & Laminated | 3.00 | $324.00 | $972.00 |
| 36x48 Color Chart ½" Mounted & Laminated | 17.00 | $260.00 | $4,420.00 |
| 36x48 B&W [1 letter illegible]nt. w/Yellow Highlight ½" Mounted & Laminated | 2.00 | $114.75 | $229.50 |
| 36x48 B&W Enlargement ½" Mounted & Laminated | 3.00 | $104.75 | $314.25 |
| 8½x11 Color Copy | 120.00 | $2.50 | $300.00 |
| Art Director | 7.70 | $165.00 | $1,270.50 |
| InfoDesign Consultant | 3.75 | $245.00 | $918.75 |
| Computer Design | 24.25 | $185.00 | $4,486.25 |
| | | | |
| **Subtotal** | | | $12,911.25 |
| **Tax** | | | $89.80 |
| **Total** | | | $13,001.05 |

The costs for the exhibits themselves, *i.e.*, the first five items listed on the invoice, are reasonable. The court cannot determine, however, whether the fees paid to an "Art Director," "InfoDesign Consultant," or "Computer Design" consultant were reasonable or even compensable. Mentor provides no explanation as to why such services were necessary for creating the demonstrative exhibits. The court cannot award fees for such consultants based on this record. Mentor is entitled to reasonable costs for the exhibits, $6,235.75.

## IV.    Witness Travel and Accommodations

Mentor seeks $18,286.83 in witness expenses for four witnesses, Jack Scherer, Larry Specter, Anthony Mastroianni, and Mark Peryer. (Bill of Costs ($18,208.14); Supp. Bill of Costs ($78.69).) Section 1920(3) allows costs for witness fees that are specified in 28 U.S.C. § 1821. Those sections authorize the award of costs for reasonable travel and subsistence expenses of witnesses. *See Majeske*, 218 F.3d at 825-26. Although Mentor provides a spreadsheet of various categories of witness expenses (Bill of Costs at Spread B), that spreadsheet is not sufficiently detailed to determine whether the claimed costs are allowable expenses.[5] Mentor's claims for costs will therefore be analyzed based on the actual receipts it submitted.

### A.    Airfare

A prevailing party is entitled to travel expenses for witnesses as long as the witness "utilize[s] a common carrier and the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1).

---

[5] For example, the spreadsheet has one column labeled "Accomdations [sic], Etc.," and another column labeled "Other."

Telular acknowledges that Mentor is entitled to some reimbursement for reasonable witness travel costs, but objects to Mentor's claimed costs for airfares, arguing that it is impossible to tell from the Bill of Costs whether the fares were "most economical rate reasonably available." (Pl.'s Resp. at 5.) Although receipts were not provided for each witness, the receipts Mentor does provide indicate that those witnesses traveled in economy class (Bill of Costs, Ex. B at 10, 32), and Telular's objection does not preclude Mentor's recovery.

### 1.    Airfare for Jack Scherer

Mentor seeks a total of $756.64 for airfare for Jack Scherer. (Bill of Costs at Spread B.) First, Mentor seeks $214.44 for airfare for Mr. Scherer traveling to Chicago from Philadelphia on October 3, 2005 and returning on October 4, 2005. (Bill of Costs, Ex. B at 9-10.) Mentor, however, does not explain the purpose of that trip. It is impossible to tell from the records provided whether Mr. Scherer traveled to Chicago to testify in court or at his deposition, which is the only purpose for which reimbursement is allowed. 28 U.S.C. § 1821(a)(1). It is clear from the record, however, that there was no hearing, trial, or any other in-court testimony in this case on either October 3, 2005 or October 4, 2005. Mentor is not entitled to $214.44 for the October 3-4 airfare for Mr. Scherer.

Second, Mentor also seeks a total of $542.20 for airfare for Mr. Scherer traveling to Chicago from Philadelphia on October 25, 2005 and returning on October 27, 2005. Mr. Scherer testified at the jury trial on October 27, 2005, and Mentor is entitled to reimbursement for Mr. Scherer's airfare. There are three airfare receipts associated with this ticket: (1) $185.04 for departure at 5:55 p.m. on October 25 and returning at 9:35 a.m. on October 27 (Bill of Costs, Ex. B at 12-13); (2) $295.96 for a return flight at 8:50 p.m. on October 27 (id. at 17-18); $61.20 for a return flight (exchanged ticket)

at 4:15 p.m. on October 27 (*id.* at 20-21). The court agrees with Mentor that Mr. Scherer had to remain in Chicago past his scheduled stay in order to complete his testimony. *See* Def.'s Reply at 9. Mentor is entitled to $542.20 for airfare for Mr. Scherer.

### 2. *Airfare for Mark Peryer*

Mentor seeks a total of $6,975.05 in airfare for witness Mark Peryer. (*See* Bill of Costs at Spread B.) There are three trips associated with that total: (1) $2,516.28 for airfare to Chicago on August 30, 2004 from London, England, returning on September 1, 2004[6] (*id.*; *see id.* Ex. B at 46); (2) $2,242.79 for airfare to Chicago on November 3, 2004 from London, returning on November 5, 2004 (Bill of Costs at Spread B; *see id.* Ex. B at 50); (3) $2,215.98 for airfare to Chicago on October 21, 2005 from London, returning on October 27, 2005 (*id.* at Spread B).[7] Mentor states only that Mr. Peryer "was forced" to come to the United States from the United Kingdom three times, without explaining the purpose of Mr. Peryer's trips. (Def.'s Reply at 10.) The October 21-27, 2005 trip was for Mr. Peryer's testimony as a witness at trial. Mentor is entitled to reimbursement in the amount of $2,215.98 for airfare for that trip. However, because Mentor did not explain or provide evidence of the purpose of the earlier two trips, it is not entitled to reimbursement for the airfare associated with those trips.

---

[6] Spreadsheet B indicates Mr. Peryer returned on September 4; the e-ticket provided, however, indicates he returned on September 1 (Bill of Costs, Ex. B at 46.)

[7] The cost of the tickets appears as "GBP," or "Great Britain Pounds," not as U.S. dollars. Because Telular does not object to Mentor's conversion of the amounts, it is assumed that Mentor's conversion calculations are correct.

### *3. Airfare for Anthony Mastroianni*

Mentor seeks a total of $805.69 for airfare for Anthony Mastroianni, for a trip to Chicago on October 23, 2005, returning on October 26, 2005. (Bill of Costs at Spread B.) No receipt was provided for this airfare. The only documentation provided is a reimbursement slip from Mentor's counsel to Mr. Mastroianni in the amount of $805.69 (*id.* Ex. B at 38), which does not specify what costs were reimbursed. Although Mr. Mastroianni testified on two days at the trial, Mentor has not demonstrated what portion, if any of the $805.69, is attributable to airfare. Accordingly, the court cannot award costs for Mr. Mastroianni's airfare.

### *4. Airfare for Laurence Specter*

Mentor seeks a total of $537.52 in airfare for Laurence Specter.[8] (Bill of Costs at Spread B.) According to submitted documents, Mr. Specter's flight cost $437.52. (*id.* Ex. B at 31-32.) There is also a receipt for a $100.00 charge, the purpose of which is not stated. (*Id.* at 34.) The receipt submitted for Mr. Specter's flight shows travel from Boston to Chicago on October 24, Chicago to Toronto, Canada, on October 26, and Toronto to Boston on October 28. (*Id.* at 31-32.) Mentor offers no explanation as to why Mr. Specter flew back to Boston via Toronto. Reimbursement is only allowed for "the actual expenses of travel on the basis of . . . the distance necessarily traveled to and from such witness's residence by the *shortest practical route* in going to and returning from the place of attendance." 28 U.S.C. § 1821(c)(1) (emphasis added). In the absence of any segregation of the amount incurred for the purpose of his testimony in this case, the court cannot

---

[8] Mentor's spreadsheet states it claims $609.06 for Mr. Specter's airfare. (Bill of Costs at Spread B.) However, the receipts provided indicate that Mr. Specter's airfare totaled $537.52. (Bill of Costs, Ex. B at 31-32, 34.)

determine what amount is a recoverable cost. Mentor is not entitled to reimbursement for Mr. Specter's airfare.

### B.    Witness Accommodation

Under 28 U.S.C. §§ 1920(3) and 1821, a prevailing party is entitled to subsistence expenses for witnesses, which include accommodation expenses. Mentor seeks accommodation expenses for the four witnesses discussed above. As an initial matter, Mentor is not entitled to reimbursement for lodging expenses (or any other subsistence expenses) for Mr. Scherer's October 3-4, 2005 trip or for Mr. Peryer's August 30-September 1, 2004 and November 3-5, 2004 trips because Mentor has failed to demonstrate that the travel was for a reimbursable purpose, such as appearing in court or for a deposition. 28 U.S.C. § 1821(a)(1).

As for the other lodging expenses claimed, Mentor is entitled only to "an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services." 28 U.S.C. § 1821(d)(2); *see also* 28 C.F.R. § 21.4(c). The maximum reimbursement amount for lodging in Chicago during 2005 was $149.00 per night. United States General Services Administration, *Per Diem Rates - Illinois - FY 05*, http://www.gsa.gov/Portal/gsa/ep/content View.do?queryYear=2005&contentType=GSA_BASIC&contentId=17943&queryState=Illinois &noc=T (2005).

Mentor argues that its witnesses were required to stay at more expensive lodgings because there were no less expensive hotels available as a result of the baseball World Series taking place in Chicago at the time of the trial. (Def.'s Reply at 9.) Unfortunately for Mentor, the statute does not take into account the extraordinary nature of the World Series in Chicago, and Mentor is entitled

to only the standard per diem allowance for its witnesses. Mentor is entitled to no more than two nights of lodging for Mr. Scherer (October 25 and 26, 2005) for a total of $298.00; six nights of lodging for Mr. Peryer (October 21-27, 2005) for a total of $894.00; two nights of lodging for Mr. Mastroianni (October 24 and 25, 2005)[9] for a total of $298.00; and two nights of lodging for Mr. Specter (October 24 and 25, 2005) for a total of $298.00. The total amount for witness accommodation awarded to Mentor is $1,788.00.

## C. Witness Meals & Subsistence

To the extent Mentor claims costs for witness meals that exceed the maximum reimbursement amount for meals in Chicago during 2005 ($51.00 for full days; $38.25 for the first and last day of travel), it is not entitled to an award of those costs. United States General Services Administration, *Per Diem Rates - Illinois - FY 05*, http://www.gsa.gov/Portal/gsa/ep/content View.do?queryYear=2005&contentType=GSA_BASIC&contentId=17943&queryState=Illinois &noc=T.

Mentor is entitled to $127.50 each for Mr. Scherer, Mr. Mastroianni, and Mr. Specter ($51.00 for one full day; $38.25 for first and last day), for a total of $382.50. Mentor is entitled to $331.50 for subsistence for Mr. Peryer ($51.00 per day for five full days, $38.25 for first and last day). In sum, Mentor is awarded a total of $714.00 for subsistence costs for these four witnesses. Mentor is not entitled to any other "subsistence" costs, including the cost of the Brooks Brothers shirt purchased by Mr. Scherer.

---

[9] Although Spreadsheet B requests hotel accommodations from October 23-26, 2005 (three nights), the invoices submitted only reflect charges for October 24-26, 2005 (two nights). (Bill of Costs, Ex. B at 39-40.)

## D. Witness Taxicab and Parking Costs

Section 1821 expressly authorizes reimbursement for "taxicab fares between places of lodging and carrier terminals[] and parking fees (upon presentation of a valid parking receipt)." 28 U.S.C. § 1821(c)(3). While Mentor does not break down taxi and parking costs incurred by witnesses, Mentor does submit several receipts supporting such charges. Mentor is entitled to reimbursement for taxi and parking charges for witnesses on the authorized dates discussed above. First, Mentor is entitled to $85.00 for taxi costs for Mr. Scherer ($40 on October 25, 2005 for a trip from the airport in Chicago to his hotel (*see* Bill of Costs, Ex. B at 4, 26) and $45 on October 27 for the trip from the courthouse to the airport (*id.* at 26)). Second, Mentor is entitled to $38.40 for parking at Boston's airport for 3 days (October 24-26, 2005) for Mr. Specter.[10] Third, for Mr. Mastroianni, Mentor is entitled to $80 in taxi costs for trips to and from his hotel and the airport in Chicago on October 24 and 26, 2005 (*id.* at 41, 42); $44.63 in parking costs at the airport in Newark from October 24-26 (Supp. Bill of Costs at 7); and $37.44 in mileage costs[11] for the drive

---

[10] The receipt shows a charge of $64.00 for five days from October 24-28. (Bill of Costs, Ex. B at 37.) However, reimbursement is only allowed for the time Mr. Specter was required to spend in Chicago testifying at trial, or October 24-26. Three-fifths of $64.00 equals $38.40.

[11] "Computation of mileage under [28 U.S.C. § 1821(c)] shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services." 28 U.S.C. § 1821(c)(2). The mileage allowance rate in effect from September 1, 2005 through January 1, 2006, which encompasses the relevant time period here, was $0.485 per mile. United States General Services Administration, *Privately Owned Vehicle (POV) Mileage Reimbursement Rates*, http://www.gsa.gov/Portal/gsa/ep/contentView.do?contentId=9646&contentType=GSA_BASIC (last reviewed 06/15/06). Mentor's expense sheet indicates a reimbursement rate of $0.36 per mile (Bill of Costs, Ex. B at 7), which is below the permissible rate and is therefore reasonable. The expense sheet shows mileage of 52 miles for a one way trip from Mr. Mastroianni's residence to the airport (*id.*), for a total of 104 miles multiplied by $0.36 per mile, which equals $37.44.

to and from his residence and the airport on October 24 and 26 (*id.*),[12] for a total of $162.07.

Fourth, Mentor is not entitled to any such costs for Mr. Peryer. Mentor submits a receipt for Mr. Peryer's parking costs at London's Heathrow airport. (Bill of Costs, Ex. B at 50.) However, that receipt is dated November 3-6, 2004 (*id.*), and Mentor is not entitled to reimbursement for Mr. Peryer's expense for those dates, as discussed above. Mentor also submits a spreadsheet from its counsel's law firm of expenses associated with Mr. Peryer for 2005 which indicates parking costs of $235.41 and "car expenses" of $13.25. (*Id.* at 43.) No further explanation of "car expenses," however, was provided, nor were any receipts supporting these expenses provided, as is explicitly required by 28 U.S.C. § 1821(c)(1). Mentor is therefore not entitled to reimbursement for these costs.

## V.    Attorney and Client Travel and Subsistence

Mentor seeks a total of $20,800.90 for attorney and client travel and subsistence expenses ($6,840.63 for client expenses (Bill of Costs at Spread C); $7,492.74 for attorney expenses from original Bill of Costs (*id.* at Spread D); and $6,467.53 for attorney expenses from the supplement (Supp. Bill of Costs at Spread D)). Attorney expenses are not authorized as recoverable costs when recovery of attorneys' fees is not allowed, as is the case here. *Mihailovich v. Laatsch*, No. 99 C 4780, 2002 WL 91897 at *4 (N.D. Ill. Jan. 24, 2002) (Darrah, J.) (citing *Wahl*, 511 F.2d at 217); *Harkins*, 286 F. Supp. 2d at 983 (citing *Wahl*). Mentor cites no authority supporting its argument that the court may award these costs. (*See* Def.'s Reply at 10-11.) Mentor is not entitled to any of

---

[12] Although receipts were not provided for the parking costs, nor was documentation provided to support the number of miles from Mr. Mastroianni's residence to the airport, those costs were documented on an expense sheet and, furthermore, are not unreasonable.

these claimed expenses. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-43 (1987); *see also Mihailovic*, 2002 WL 91897 at *4; *Harkins*, 286 F. Supp. 2d at 983.

## VI.    Lexis and Law Bulletin Legal Research

Mentor seeks $157.32 for Lexis-Nexis and Legal Bulletin online legal research. (Bill of Costs at Spread E.) Contrary to Mentor's assertions, online legal research is not a recoverable cost under § 1920. Mentor cites cases where online legal research expenses were allowed as part of an attorneys' fee award. (Def.'s Reply at 11.) However, "[i]t is well established that costs associated with computerized legal research are not considered 'costs' but rather part of the attorney's fees award." *Angevine*, 2003 WL 23019165 at *9 (citation and internal quotation omitted); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000) ("Computer research charges are considered a form of attorneys' fees," and are accordingly not awarded where there has been no such award) (citing *Haroco, Inc. v. Am. Natl. Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994)). There has been no attorneys' fee award in this case. Mentor is not entitled to recover costs for online legal research.

## VII.    General Expenses

Mentor seeks $2,674.65 for general expenses, *i.e.*, Federal Express delivery charges, fax fees, long distance telephone charges, messenger service charges, and costs for office supplies. (Bill of Costs at Spread E ($1,401.81); Supp. Bill of Costs at Spread C ($1,272.84).) Package delivery, fax, telephone, and messenger charges are generally not recoverable as costs under § 1920. *Wahl*, 511 F.2d at 217; *Angevine*, 2003 WL 23019165 at *7, 9-10; *Fait*, 2002 WL 31433424 at *6; *Bass v. Zeta*

*Consumer Prods.*, No. 98 C 8235, 1999 WL 1129603 at *2 (N.D. Ill. Dec. 3, 1999) (Conlon, J.).

Such costs are not enumerated in § 1920. Mentor is not entitled to these expenses. *See Crawford Fitting*, 482 U.S. at 441-43.

### CONCLUSION

For all the reasons stated above, Mentor is entitled to a total award of $19,670.38.

**SO ORDERED.**

_Geraldine Soat Brown_
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**June 16, 2006**

FILED-EDT

2006 JUN 16 PM 12: 14

CLERK
U.S. DISTRICT COURT